

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR 11-50067-RAL |
| | * | |
| Plaintiff, | * | |
| | * | OPINION AND ORDER |
| vs. | * | GRANTING MOTION TO |
| | * | AMEND/CORRECT |
| JEFFREY CHIPPS, | * | JUDGMENT |
| | * | |
| Defendant. | * | |

## I. INTRODUCTION

On October 20, 2011, Jeffrey Chipps pleaded guilty to one count of larceny, in violation of 18 U.S.C. §§ 661 and 1153. Doc. 24. On December 15, 2011, Chipps was sentenced by the Honorable Jeffrey L. Viken to time served and ordered to pay restitution, but Judge Viken left open the amount of restitution owed for up to 90 days for the Government to establish the correct restitution amount. Doc. 34. After the case was transferred to the undersigned judge, the Government filed a Motion to Amend/Correct Judgment, Doc. 50, to determine the amount of restitution owed by Chipps. Chipps objected based on more than 90 days having elapsed since his sentencing. For the reasons stated below, this Court grants in part the Government's motion to assess restitution against Chipps.

## II. FACTS

Chipps was indicted in the Western Division of the United States District Court for the District of South Dakota on June 22, 2011, for one count of burglary and two counts of larceny. Doc. 1. Chipps ultimately pleaded guilty before Judge Viken to one count of larceny. Doc. 24. Chipps admitted that, following an evening of drinking, he walked to Stanley Porch's house, found the keys in Porch's 2008 Trailblazer, started the truck, and drove it from Porch's house. Doc. 26. After driving only a few miles, Chipps lost control of the Trailblazer and crashed into

a ditch, causing extensive damage to the truck. Doc. 26. Chipps got out of the wrecked vehicle and walked home. Doc. 26.

Chipps entered into a Plea Agreement agreeing that "[r]estitution may also be ordered." Doc. 24 at 2. The Presentence Investigation Report ("PSR"), however, was more direct; the PSR stated that "[r]estitution shall be ordered. USSG § 5E1.1. The victim submitted a declaration of loss for $29,475.95." PSR ¶ 65. The PSR stated elsewhere that the total loss for specific offense guideline purposes was $16,500.00—$16,000.00 for the Trailblazer and $500.00 for items of Porch's personal property taken by Chipps during the larceny. PSR ¶ 17; Sentencing Hr'g Tr. 6, Dec. 15, 2011.[1] At the Sentencing Hearing on December 15, 2011, Judge Viken told Chipps that "[t]here's some restitution that the law requires me to impose on you if it's proven . . . . And so if you look over on paragraphs 64 and 65 [of the PSR], the restitution is required; it's mandatory because of the loss of property in the case or the damage to the property." Sentencing Hr'g Tr. 5. Chipps did not object to the fact that restitution was mandatory. Sentencing Hr'g Tr. 6. Chipps, however, did object to the amount of restitution sought by the victim, Stanley Porch, at the sentencing hearing. Sentencing Hr'g Tr. 6; Doc. 51 at 1-2. The Government, it appears, was seeking restitution in the amount of $29,475.95, which was the full amount that Porch requested. Sentencing Hr'g Tr. 6. The PSR, however, used the insured value of the Trailblazer to calculate that the proper amount of restitution as $16,000.00 for the Trailblazer.[2] Sentencing Hr'g Tr. 6.

---

[1] Two hearings at which Chipps appeared are relevant to this Opinion and Order and will be cited. Chipps's first sentencing hearing took place before Judge Viken on December 15, 2011. Citations to this hearing will use "Sentencing Hr'g Tr." followed by a page citation. Chipps's second hearing was a hearing on a petition to revoke supervised release that took place before this Court on May 6, 2013, and which resulted in a sentence of Chipps to nine months incarceration for his revocation. Doc. 47; Doc. 48. Citations to this hearing will use "Revocation Hr'g Tr." followed by a page number.

[2] As previously noted, the PSR calculated the total restitution amount as $16,500.00—$16,000.00 represented the insured value of the Trailblazer and an additional $500.00 represented the value of personal property items of Porch's that were taken by Chipps during the larceny. Sentencing Hr'g Tr. 6. However, it appears that the property taken by Chipps during the

2

The $16,000.00 valuation reportedly was consistent with the "Blue Book" value of similar Trailblazers. Sentencing Hr'g Tr. 6-7.

The Government requested a separate and later evidentiary hearing to resolve the disputed amount of restitution. Sentencing Hr'g Tr. 6-7. The Court granted the Government's request to hold a separate hearing on the "restitution figure, which is limited to the loss of the pickup, or if Mr. Porch can show some other related expenses connected with the loss of the vehicle, as he's claimed in his victim impact statement, then we'd hear evidence as to that as well." Sentencing Hr'g Tr. 8-9. Judge Viken then ordered that Chipps "shall make restitution to Stanley Porch in an amount to be determined within 90 days of the sentencing date." Sentencing Hr'g Tr. 25. Judge Viken sentenced Chipps to time served with three years of supervised release. Sentencing Hr'g Tr. 22-24.

Ninety days from the December 15, 2011 sentencing hearing was March 14, 2012. On March 28, 2012, already after the 90-day deadline, DeSmet Insurance Company of South Dakota ("DeSmet"), the company that had insured Porch's Trailblazer, submitted documentation to the Government asking for restitution in the amount of $22,574.01—$22,074.01 to DeSmet for replacing the Trailblazer and $500.00 to Stanley Porch for reimbursement of his deductible. Doc. 51 at 2; Doc. 50. The Government neglected to file those documents with the Court so no restitution amount was finalized. Doc. 51 at 2.

---

larceny was returned to Porch undamaged. Discussion during the sentencing hearing suggests that the parties agreed that the restitution calculated in the PSR for the personal property damage should not apply. See Sentencing Hr'g Tr. 6-7. Argument centered on the proper amount of restitution for the Trailblazer alone. See Sentencing Hr'g Tr. 6-8. The Government's recent filings support the view that restitution is not owed for personal property damage. Indeed the Government is seeking restitution only related to damage done to the Trailblazer and is not seeking restitution for any personal property damages. See Doc. 50. Thus, this Opinion and Order will discuss the restitution in terms of what was sought in the PSR for the Trailblazer—$16,000.00—rather than the total restitution amount included in the PSR—$16,500.00.

On October 16, 2012, Chipps was charged in the Central Division of the United States District Court for the District of South Dakota with one count of assault with a dangerous weapon, and one count of assault resulting in serious bodily injury. United States v. Chipps, CR-12-30161-RAL, Doc. 1. Based on the new charges, a Petition to Revoke Supervised Release, Doc. 36, was filed in Chipps's larceny case as he was still serving his term of supervised release ordered by Judge Viken. Chipps was arrested and the criminal case stemming from the larceny originally before Judge Viken was reassigned to the undersigned judge to unite all pending cases concerning Chipps before the same judge.

On May 6, 2013, this Court held a hearing concerning the Revocation of Supervised Release in this case and sentencing on Chipps's new assault conviction. Doc. 48; Revocation Hr'g Tr. 11, May 6, 2013. Before the hearing, this Court, suspecting that Chipps had not fulfilled his restitution obligations in full, asked the United States Probation and Pretrial Services Office how much Chipps still owed for restitution. Revocation Hr'g Tr. 4. This Court then learned that restitution had been left open but apparently was never finalized. Revocation Hr'g Tr. 4. At the Revocation Hearing, this Court asked the Government if it had any different information regarding restitution. Revocation Hr'g Tr. 4. The Government's attorney did not have any information at that time about whether restitution had been finalized. Revocation Hr'g Tr. 4-5. While outlining Chipps's criminal history, this Court spoke about the larceny conviction in which he stole and wrecked the Trailblazer and noted that it was remarkable to this Court that Chipps was not ordered to pay restitution. Revocation Hr'g Tr. 13. This Court's inquiry into Chipps's restitution amount prompted the Government to investigate why restitution had not been ordered in Chipps's original case. The Government then realized it had failed to file the documents sent by DeSmet and to obtain a final restitution award within the time that Judge Viken set to do so. Doc. 51 at 2.

On May 7, 2013, the Government filed its Motion to Amend/Correct Judgment, Doc. 50, asking this Court to award restitution in the amount of $22,574.01. The Government argues that its restitution request is consistent with the restitution award that was anticipated at Chipps's sentencing hearing before Judge Viken and that the victim should not suffer based on the Government's negligence. Doc. 51 at 4-5. This Court on July 9, 2013, held a hearing on whether the sentencing court's failure to issue a restitution amount within the statutorily proscribed 90-day period renders this Court unable to award restitution.

## III. DISCUSSION

The Mandatory Victims Restitution Act ("MVRA") provides that a sentencing court "'shall order' a defendant convicted of 'an offense against property under this title' . . . to pay restitution to a 'victim of the offense.'" United States v. Adetiloye, 716 F.3d 1030, 1039 (8th Cir. 2013) (quoting 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii)). "If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing . . . the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." 18 U.S.C. § 3664(d)(5). Nevertheless, if the sentencing court does not award a specific restitution amount within the 90-day period for doing so, the sentencing court "nonetheless retains the power to order restitution—at least where . . . the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open . . . only the amount." Dolan v. United States, 130 S.Ct 2533, 2537 (2010).

In Dolan, the defendant was convicted of a crime that made restitution mandatory under the MVRA. Id. at 2537. Dolan's plea agreement stated that "restitution . . . may be ordered by the Court," and the PSR indicated that restitution was required without specifying an amount because the writer lacked precise information about the victim's losses. Id. At sentencing and in its judgment, the district court noted that restitution was "mandatory," but left open the total amount to be determined until additional information became available. Id. The probation office

5

received the information and determined the total amount of restitution it believed appropriate within the 90-day period, but the sentencing court set the restitution hearing at a much later date, some three months after the 90-day period expired. Id. No party asked for an earlier hearing, but at the hearing Dolan argued that the sentencing court could no longer issue restitution because it failed to meet the 90-day deadline. Id. The Supreme Court of the United States held that the consequences of the sentencing court missing the statutorily proscribed 90-day deadline do not include being unable to order restitution, at least when the court makes clear to the defendant "prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount." Id.

Here, while the delay between Chipps's sentencing and a final determination of his restitution obligations is much longer than 90 days, this Court still possesses the ability to "essentially fill in an amount-related blank" in Chipps's judgment that made clear restitution would be ordered. Id. at 2544. Like Dolan, Chipps's crime is subject to mandatory restitution under the MVRA, his Plea Agreement noted that restitution may be ordered, his PSR contemplated restitution as mandatory, and the sentencing court during the sentencing hearing and in its judgment ordered restitution while leaving open only the final amount. Chipps, therefore, knew of his restitution obligation before the 90-day period ran. Indeed Chipps at his hearing did not object to being ordered to pay restitution; his counsel acknowledged restitution was proper and objected only to the amount. He also knew of a general amount that would be owed—somewhere between the $16,000.00, which Chipps thought proper, and the $29,475.95, which the victim sought at that time. Although DeSmet could have been more prompt with its information, and the Government should have filed the restitution information upon receiving it, the victims—particularly Stanley Porch—should not be injured because of the Government's negligence. The statute's primary purpose is to ensure crime victims receive compensation. Any minimal burden Chipps faced from a delayed decision as to his financial liability is "a small cost

relative to the prospect of depriving innocent crime victims of their due restitution." Id. at 2542. Finally, Chipps does not allege, nor can he, that he suffered any prejudice from the delay in finalizing the restitution amount. See United States v. Monzel, 746 F. Supp. 2d 76, 83 (D.D.C. 2010) (considering whether the defendant suffered actual prejudice along with the holding in Dolan when ruling on a motion for restitution in light of the Government's failure to comply with time limits proscribed in § 3664(d)(1)). This Court, therefore, retains the ability to assess restitution.

Chipps argued at the hearing on this issue that the need for finality weighs in favor of preventing this Court from ordering restitution. The delay between sentencing and a restitution award here is greater than the delay the Supreme Court confronted in Dolan, and greater than some other delays courts have confronted after Dolan. See e.g., United States v. Pickett, 612 F.3d 147, 148-50 (2nd Cir. 2010) (finalizing restitution award that was objected to 98 days after original sentencing). Although providing the defendant with a speedy determination of his restitution obligation is an important consideration, the MVRA is primarily designed "to assure that victims of a crime receive full restitution." Dolan, 130 S.Ct at 2549; see also Adetiloye, 716 F.3d at 1040 (observing that "[t]he intended beneficiaries of the MVRA's procedural mechanisms are the victims, not the victimizers") (internal quotation marks and citation omitted). The purpose of the MVRA is to reimburse the victims of crimes. Adetiloye, 716 F.3d at 1040. That purpose ought not to be "'prejudiced by the negligence of the officers or agents to whose care'" those interests are entrusted. Id. (quoting United States v. Montalvo-Murillo, 295 U.S. 711, 718 (1990)). Thus, Dolan and the public policy purposes underpinning the MVRA support ordering restitution in this instance.

The Government has filed a letter by DeSmet stating that it is seeking restitution in the amount of $22,074.01 and that Porch also should receive $500.00. Doc. 50-1. Chipps has objected to this Court's ability to enter a restitution award, and previously objected to any amount

7

above $16,000.00, but has not objected to the new restitution amount at this point. Therefore, Chipps will have 21 calendar days to object to the new restitution amount and, if he so objects, to contact this Court to schedule a restitution hearing. If Chipps objects, the Government will have to meet its burden showing that the total amount of restitution sought was sustained by the victim.

## IV. ORDER

It is hereby

ORDERED that the Government's Motion to Amend/Correct Judgment, Doc. 50, is granted in part. This Court retains the ability to "fill in the blank" on the original judgment. It is further

ORDERED that the Defendant has 21 calendar days from the date of this Opinion and Order to object to the restitution amount of $22,574.01, and contact the Court to set a hearing date. It is finally

ORDERED that if Chipps does not object within 21 calendar days, this Court will issue a restitution award in the amount of $22,574.01.

Dated September 6, 2013.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE